IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS (KANSAS CITY)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| Plaintiff, | } | Case No. 2:14-cr-20098-CM-1 |
| | } | |
| vs. | } | |
| | } | Hon. Carlos Murguia |
| EDWARD E. MCLINN, | } | United States District Judge, |
| Defendant. | } | Presiding |

**MOTION TO DIMISS COUNT 1**

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(i), the Defendant, Edward McLinn moves this Court to dismiss Count 1 of the third superseding indictment because the count is duplicitous (i.e., it joins two offenses in the same count).

## I. Procedural Background

In April 2019, the grand jury returned a seven-count second superseding indictment in this case. D.E.136. Count 1 alleged a conspiracy between Mr. McLinn and his father under 18 U.S.C. § 371 (the general federal conspiracy statute). *Id.* at 1-10. Count 1 charged that, from December 13, 2013 to January 7, 2014, Mr. McLinn conspired with his father to straw purchase a lower receiver, in violation of 18 U.S.C. § 922(a)(6). *Id.* at 4.

Four months later, in August 2019, the grand jury returned a three-count third superseding indictment. D.E.149. Count 1 again alleges a conspiracy between Mr. McLinn and his father under 18 U.S.C. § 371 (the general federal conspiracy statute). D.E.149 at 1-11. Count 2 alleges that Mr. McLinn aided and abetted his father's straw purchase of a "5.56 caliber Stag Arms forged lower receiver," 18 U.S.C. §§ 2, 922(a)(6) (the same lower receiver at issue in Count 1 of the prior indictment). Count Three alleges that Mr. McLinn aided and abetted his father's straw purchase of a ".45 caliber Sig Sauer pistol," 18 U.S.C. §§ 2, 922(a)(6) (Count Three). *Id.* at 11-12.

1

The conspiracy alleged in Count 1 of the superseding indictment is broader than the conspiracy alleged in the prior indictment. Count 1 now charges both Counts 2 and 3 (not just Count 2) as the alleged criminal **objectives** (plural) of the charged conspiracy in Count 1. *Id.* at 5. Count 1 plainly states that Mr. McLinn "unlawfully and knowingly conspired and agreed with Daryl R. McLinn, to commit the following **offenses,**" (plural) and then lists the two offenses alleged in Counts 2 and 3. *Id.* at 5-6 (emphasis added). Indeed, Count 1 expressly alleges that the charged conspiracy did not have a singular criminal objective, but instead had multiple objectives. *Id.* at 6 ("In furtherance of this conspiracy and to effect and accomplish the **objects** of it") (emphasis added).

Moreover, the indictment does not allege that the McLinns entered into one agreement to commit these two offenses. Instead, the indictment alleges that, "on or about December 13, 2013, and December 27, 2013, Edward E. McLinn requested that his father assist with the purchase of [the] lower receiver" charged in Count 2. *Id.* at 8-9. The indictment then alleges that Daryl McLinn purchased the lower receiver on January 6, 2014. *Id.* at 9. The indictment also alleges that Daryl McLinn purchased the pistol charged in Count 3 over six months later, "[o]n or about July 28, 2014." *Id.* at 9-10. The indictment alleges that Edward accompanied his father to purchase the firearm, and that he was present during the purchase. *Id.* at 10.

But the indictment never alleges that the two agreed to commit each of these offenses at the same time or as part of one single criminal objective. *See id.* at 1-11. Nor does the indictment allege that the two acted in concert, but instead lists acts committed by "**one or more** of the conspirators." *Id.* at 6. And while the indictment alleges that Edward McLinn's objective in possessing the lower receiver was to build an AR-15, the indictment does not allege that his father had a similar objective (or that they conspired to build this firearm), or even that Edward McLinn's objective was a **criminal** objective. *See generally id.* at 6-11. Additionally, the indictment's discussion of the completed AR-15 (allegedly made from the lower receiver charged in Count 2) is in no way linked to the pistol

2

charged in Count Three. *See id.* The indictment merely alleges that both guns were found at Edward McLinn's home in September 2014. *Id.* at 10-11.

## II. Discussion

### A. Count 1 is duplicitous.

An indictment that joins two offenses in one count – a duplicitous indictment – is defective. Fed.R.Crim.P. 12(b)(3)(B)(i); *see also United States v. Trammell*, 133 F.3d 1343, 1354 (10th Cir. 1998) ("A duplicitous indictment charges the defendant with two or more separate offenses in the same count."). The ambiguity and confusion of a duplicitous indictment creates several dangers: (1) a jury might convict a defendant without reaching a unanimous verdict; (2) a defendant might be prejudiced in a subsequent double jeopardy defense; and (3) a district court may have difficulty ruling on the admissibility of evidence. *Id.* A duplicitous indictment may also "give a defendant improper notice of the charges against him, prejudice the defendant in sentencing, and limit the scope of the defendant's appeal." *Id.* at 1354 n.1.

A conspiracy conviction under § 371 has five elements: "(1) an agreement, (2) to break the law, (3) an overt act, (4) in furtherance of **the conspiracy's object**, and (5) proof that the defendant willfully entered the conspiracy." *United States v. Wells*, 873 F.3d 1241, 1256 (10th Cir. 2017) (emphasis added). "To determine the scope of the alleged conspiratorial agreement, the court is bound by the language of the indictment." *United States v. Qayyum*, 451 F. 3d 1214, 1218 (10th Cir. 2006). "We test the indictment solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *Qayyum* 451 F. 3d at 1218 (quoting *United States v. Reitmeyer,* 356 F.3d 1313, 1316–1317 (10th Cir. 2004)).

Count 1 is duplicitous because it joins two separate conspiracy offenses. This much is obvious from the face of the indictment. The indictment does not allege that Mr. McLinn and his father straw-purchased the lower receiver and the pistol as part of some broad criminal objective. The

3

indictment does not even allege a broad criminal objective. Rather, the indictment alleges that Mr. McLinn and his father agreed and conspired to commit two separate "**offenses**" (the substantive offenses alleged in Counts 2 and 3). D.E.149 at 5. According to the indictment, Mr. McLinn and his father had more than one criminal objective. *Id.* at 6. And as alleged here, again, those objectives were not part of some overarching conspiracy.

We know this because the indictment does not allege that the McLinns entered into one agreement to commit these two offenses. The indictment alleges that, "on or about December 13, 2013, and December 27, 2013, Edward E. McLinn requested that his father assist with the purchase of [the] lower receiver" charged in Count 2. *Id.* at 8-9. It does not also allege that this agreement encompassed the purchase of the pistol charged in Count 3. That purchase allegedly occurred more than six months later. *Id.* at 9-10. Nothing within the indictment ties this later purchase to the earlier one.

The allegations that Edward McLinn's objective in possessing the lower receiver was to build an AR-15 does not cure the duplicity. This is so because the indictment does not allege that Mr. McLinn's father had a similar objective (or that they conspired to build this firearm), or even that Edward McLinn's objective was a **criminal** objective. *See generally id.* at 6-11. And even if one could infer these things, it would not matter. The indictment's allegations of the completed AR-15 (allegedly made from the lower receiver charged in Count 2) is in no way linked to the pistol charged in Count Three. *See id.* The indictment also does not allege that the two acted in concert, but instead lists acts committed by "**one or more** of the conspirators." *Id.* at 6. And so Mr. McLinn's broader alleged objective to build an AR-15 has nothing whatsoever to do with any alleged agreement to purchase the pistol charged in Count 3.

Moreover, straw purchasing under 18 U.S.C. § 922(a)(6) is not a continuing offense. Each alleged straw purchase—the lower receiver on December 27, 2013 and the pistol on July 28, 2014—

4

would represent the achievement of a different conspiracy's criminal objective. Although the conspiracy statute presumes additional overt acts, as alleged here, each alleged conspiracy terminated following the completion of the only **criminal** objective alleged in the third superseding indictment, that is, making the false statement to purchase the lower receiver, and then making the false statement to purchase the pistol. Nothing within the indictment ties those two discrete acts (and alleged agreements to commit those acts) together.

In *Qayyum*, the Tenth Circuit considered *United States v. Davis*, 533 F. 2d 921(5th Cir. 1976). *Davis* recognizes that a conspiracy terminates following the completion of the only objective alleged in the indictment. In *Davis*, two men formed a business consortium and submitted a fraudulent contract proposal to the United States Department of Labor to train 450 unemployed people to be dry-cleaning employees. *Davis*, 533 F.3d at 924-26. They then falsely stated in their proposal that nineteen consortium members had agreed to train the workers. *Id.* The defendants were charged with § 371 conspiracy, and "the sole object of the conspiracy as charged was to make false statements and representations to the Department." *Id.* at 927. The Fifth Circuit held that the statute of limitations barred the charged conspiracy because it had "run its course with the submission of the false statements to the Department . . ., and the subsequent issue of the contract by the Department in reliance on the falsifications was not for purposes of the statute of limitations an overt act in furtherance of the conspiracy." *Id* at 928. The Court reasoned that the charged conspiracy had "run its course with the submission of the false statements." *Id.*

Here, the face of the third superseding indictment states that Mr. McLinn and his father conspired to make two false statements to two separate firearms dealers, on two separate dates regarding two separate firearms. Since the sole object of the conspiracy was to submit the false statements, the singular criminal objective of each conspiracy was achieved when those false statements were made. The alleged conspiracy involving the straw purchase of the lower receiver

5

charged in Count 2 ended when the receiver was purchased in January 2014. D.E.149 at 9. The alleged conspiracy to straw purchase the pistol ended when the pistol was purchased in July 2014. *Id.* Simply charging these offenses as conspiracies under § 371 does not transform them into continuing offenses beyond the last overt act in furtherance of the sole criminal objective, in this case, the making of false statements on the Firearms Acquisition Form (4473) by Daryl McLinn.

Of course, an indictment that "alleges several means of accomplishing a single offense rather than two separate offenses, in a single count, does not necessarily mean that it is duplicitous." *United States v. Browning, Inc.*, 572 F.2d 720, 725 (10th Cir. 1978). But an indictment that alleges two separate offenses, regardless of the means alleged to commit those offenses, is duplicitous. *Id.* at 725-726; Fed.R.Crim.P. 12(b)(3)(B)(i). That is this case. The two alleged straw purchases are not separate means to an overall conspiracy. They are separate conspiracies.

It is irrelevant that the firearms were ultimately found at Mr. McLinn's residence in September 2014. Mr. McLinn is not prohibited from possessing firearms under federal law. Section 371 requires a conspiracy to violate federal law. Because Mr. McLinn was not prohibited from possessing firearms under federal law (the indictment does not allege otherwise), he could not be charged with conspiring with his father to do just that. Instead, the government has charged two conspiracies to straw purchase guns in violation 18 U.S.C. § 922(a)(6) and § 371. The single criminal objective of each conspiracy is the straw purchase of the firearm (i.e., that Daryl McLinn falsely claimed on Form 4473 that he was the actual buyer). The government has alleged two conspiracies in one count.

To hold otherwise would be to permit the jury to convict Mr. McLinn of conspiracy absent a unanimous verdict. Some jurors might believe that Mr. McLinn only conspired with his father to straw purchase the lower receiver, while others might believe that Mr. McLinn only conspired with his father to straw purchase the pistol. Unless this Court strikes Count 1 as duplicitous, Mr. McLinn

faces a reasonable possibility of being convicted without a unanimous verdict. And that possibility raises significant Constitutional concerns. *See Richardson v. United States*, 526 U.S. 813, 820 (1999).

In practice, then, Count 1 alleges two conspiracies that could be charged as separate counts. For this reason, the jury will have difficulty in reaching a unanimous verdict. This Court will also have difficulty instructing the jury and in the determining the admissibility of evidence based on the government's theory of the case. Indeed, according to the grand jury testimony, the prosecutor, Ms. Morehead, stated, while questioning Kansas City Kansas ATF Task Officer William Johnson regarding the 5.56 Stag Arms receiver:

> And with regards to this particular case, the actual conspiracy for straw purchase, we only allege this particular [lower receiver] because of the sequence of events; is that right? We didn't do it with regards to the [pistol] because there's nothing to demonstrate when he bought the gun that he was doing it for the sole purpose of later giving it to his son?[1]

Office Johnson answered: "That's correct?" The government thus appears to agree that what it thinks is the actual conspiracy is supported only by evidence of the lower receiver and not the pistol. In any event, the indictment is duplicitous.

## III. Conclusion

For the foregoing reasons, this Court should dismiss Count 1 of the third superseding indictment as duplicitous. Alternatively, this Court could order the government to elect between the charges. *See, e.g.*, *United States v. Browning, Inc.*, 572 f.2d 720, 726 (10th Cir. 1978).[2]

---

[1] See Exhibit A: Grand Jury Transcript at 7-8
[2] We note that the government could not charge a conspiracy to straw-purchase the lower receiver for the reasons stated in our motion to dismiss Count 2. If the government elected to charge a conspiracy to straw-purchase the pistol, the lawfulness of that charge would be an open question.

7

Respectfully submitted,

s/ Chekasha Ramsey
CHEKASHA RAMSEY, #78476
Assistant Federal Public Defender
500 State Avenue, Suite 201
Kansas City, Kansas 66101
Telephone (913) 551-6712
Fax: (913) 551-6562
E-mail: Che_Ramsey@fd.org

**CERTIFICATE OF SERVICE**

I certify that on January 17, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Ms. Terra Morehead
Assistant United States Attorney
Terra.Morehead@usdoj.gov

s/ Chekasha Ramsey
CHEKASHA RAMSEY, #78476